Darrell Palmer (CA SBN 125147)
Law Offices of Darrell Palmer
603 North Highway 101, Ste A
Solana Beach, California 92075
Telephone: (858) 792-5600
Facsimile: (858) 792-5655
Email:  darrell.palmer@cox.net

Counsel for Objector, Rose A. Munoz

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| STEPHEN C. YEAGLEY, individually and on behalf of all persons similarly situated,<br><br>    Plaintiff,<br><br>  vs.<br><br>WELLS FARGO & COMPANY and WELLS FARGO BANK, N.A.,<br><br>    Defendants. | Case No.  C-05-3403 CRB<br><br>**OBJECTION TO PROPOSED SETTLEMENT,**<br>**NOTICE OF INTENT TO APPEAR AND MOTION TO INTERVENE** |

**OBJECTIONS AND NOTICE OF INTENT TO APPEAR:**

COMES NOW, Rose A. Munoz, ("Objector") Class Member to this action, by and through her undersigned counsel, and hereby files these Objections to the Proposed Class Action Settlement, gives notice of her counsel's intent to appear at the June 29, 2007 fairness hearing, and requests award of an incentive fee for serving as a named class member. In support of her objections, This Objector states as follows:[1]

**I.     OBJECTIONS**

In *Amchem v. Windsor*, 117 S.Ct. 2231, 2248 (1997), the United States Supreme Court held that all of the requirements of class certification must be met, even if the certification is sought only for the purposes of settlement.  Thus, those seeking certification must satisfy four prerequisites.  First, the class must be so numerous that joinder of all members is impracticable; second, common questions of fact

---

[1] Rose Munoz received a notice regarding this class action mailed to her home address.

1

and law must predominate over any questions affecting only individual members; third, the representative parties must fairly and adequately protect the interest of the class; and forth, class action must be the appropriate method for the fair and efficient adjudication of the controversy.

The Proposed Class Action Settlement is inadequate, unfair and unreasonable for the following reasons.

### A. The Settlement Provides No Real Benefit to the Class and Ignores the Billion Dollar Value of the Claims Against Wells Fargo

The proposed settlement provides no benefit to her or to the other class members in the face of Wells Fargo's exposure to overwhelming liability if it loses this case. Ms. Munoz can only surmise that the extremely weak settlement (estimated benefit = about ½ of 1% of minimum statutory liability[2] ) was compelled by the writ of certiorari granted by the United States Supreme Court in *Safeco Insurance Co. v Burr*.[3] In that case, the Supreme Court agreed to consider the definition of "willful" as used in the Fair Credit Reporting Act. Class Counsel may have shared the widely held view that the Supreme Court would reject the definition of willful used by the Ninth Circuit in *Reynolds v Hartford Financial Servs. Group, Inc*. 423 F 3d. 1081 (2006) and instead adopt the more strict definition used by the Eighth and Sixth Circuits.[4] Instead, and much to the delight of the consumer bar, the Court adopted the less rigorous Reynolds standard and held that "willful" as used in the FCRA covers a violation committed in reckless disregard of the requirement of the FCRA. *Safeco,* 551 U.S. ___(2007) (copy attached). This dramatically strengthens the Plaintiff's case against Wells Fargo and mandates denial of the proposed settlement at this time, and that the settlement be re-evaluated and renegotiated in view of the holding in Safeco/Geico concerning the meaning of "willful" violation of the FCRA. The affirmation of the Ninth's

---

[2] Class Counsel states at page 12 of their motion for preliminary approval (Docket # 85) that Defendant's statutory liability is $380 million to $3.8 billion. Inclusive of the requested 1.5 million in attorneys' fees, this settlement is still worth less than 3 million dollars. See discussion infra.

[3] *Cert. granted, Safeco Insurance Company of America, et al v. Burr*, No. 06-84, consolidated with Geico General Insurance Company, et al v Edo No. 06-100, Opinion delivered June 4, 2007 551 U.S. ___(2007)

[4] *See Generally, Phillips v Grendahl*, 312 F3d. 357,370 (8th Cir 2002) ("We conclude that our Circuit precedent is consistent with the rules that willful noncompliance under section 1681n requires knowing and intentional commission of an act the defendant knows to violate the law.") Accord, *Kennedy v Border City Sav. & Loan Ass'n*. 747 F.2d 367 (6th Cir 1984).

Circuits less stringent standard for proving willfulness makes a jury finding of Wells Fargo's "willfulness" a near certainty.[5]

Even if the Court disregards the impact of the Safeco/Geico decision, the settlement still should not be approved. In their moving papers made in support of the settlement, Plaintiff's make an impressive argument that they have a very strong case, and Ms. Munoz agrees that they probably do have a strong cases. That is why the weak settlement is so curious and why Ms. Munoz believes that the weight of the impending *Safeco/Geico* opinion crushed the prosecution of this case. But regardless of *Safeco/Geico*, the settlement provides virtually no benefit to the class members. If and only if they file a proof of claim, and claim rates in consumer cases are traditionally very low, especially when the benefit is of minimal value, do class members receive two free credit reports. By Federal law, they can already get one free on per year. If they are denied credit they can get additional free credit reports pursuant to the FCRA. Class members are to get about $6 worth of credit scores, if and only if they timely file a proof of claim. This is no value at all. See, *Acosta v. TransUnion*, 240 F.R.D. 564, 576-582 (C.D. Cal.) (In refusing to approve a similar settlement, the Acosta judge wrote, "In total, the free credit report and score component of the Settlement's economic relief is of very marginal, if any, value" Acosta at 577). The settlement proposed in Acosta provided more relief than proposed in this case. Ms. Munoz has attached a copy of the Acosta opinion because its analysis of the value (or lack thereof) of the settlement in that case applies equally to this case. Ms. Munoz cannot analyze or express the lack of fairness and adequacy of this settlement better that than Judge Carter did in Acosta.

Class Counsel represents that the minimum statutory damages available the class are, in the aggregate, $380 million dollars and up to $3.8 billion dollars. Then they settle the case for 1.5 million in attorneys' fees and virtually nothing for the class members. Class Counsel seeks to justify this poor settlement on the basis that this is a "negative value" case, meaning that each individual's statutory damages would not warrant individual litigation. But that is not a reason to crater. That is the reason that class actions were created and why the Court is to approve only adequate counsel who have the desire

---

[5] "Willfulness" may be found where Defendant is generally familiar with the FCRA and its requirements, where repeated violation of the FCRA are found, where Defendants employees were poorly trained on the FCRA's requirements, where Defendant's general policies violate or ignore the requirements of the FCRA or Defendant's own policies. See generally,

and means to prosecute the case with vigor. *Murray v GMAC Mortgage*, 434 F.3d 948, 953 (7th Cir. 2006) (Court was critical of class representative and class counsel who proposed a similar settlement as the one at hand (copy attached)).

**B.     The Cost of the Proposed Settlement to Wells Fargo is Practically Nothing**

Here the true value of the settlement is most probably less than 4 million dollars. Stated differently, Wells Fargo is buying a release worth up to $3.8 billion dollars for less than 4 million dollars, or one hundredth of one percent. There are 3.8 million class members. Each has a probable right to recover $100-$1000 in statutory damages. Assuming a claim rate of 3%, reasonable if not high in this case, and $6 in value to the class members who file claim, the retail value to the class members filing claims is only $684,000.00. The wholesale cost to Wells Fargo of the credit reports and credits scores is pennies on the dollar of retail value, so the cost of the class relief component of the settlement to Wells Fargo is probably less than $100,000. Add in the requested attorneys' fees of 1.5 million and this settlement is worth just over 2 million dollars, or just over ½ of 1% of the minimum statutory damages Wells Fargo faces. There is absolutely no justification for such a settlement. *See Acosta* at 576-581, *Murray* at 952-954.

The worst part of the proposed settlement is the proposal that Wells Fargo profits by the wrong Class Counsel says Wells has committed. The settlement creates a marketing plan for Wells Fargo by offering $50.00 rebates to class members who apply for and obtain a loan from Wells Fargo! This is the exact kind of offer, i.e., NOT a "firm offer of credit", that the case was meant to stop (at least until this settlement). Wells has pulled the credit report of the class members, not made a firm offer of credit to them (either originally or in the settlement notice), and been sued in this case. The solution offered is another offer of credit that is not a "firm offer of credit" that would make legitimate the otherwise impermissible access to the class members' credit files.  This is just another violation of the FCRA in the form of a class notice instead of junk mail from Wells Fargo. See generally, Acosta at 580 where the value of the release is discussed and compare that to the value of a release combined with a marketing plan for the benefit of the Defendant.

---

FAIR CREDIT REPORTING, 6th ed 2006, §11.12.1.2, published by the National Consumer Law Center, and cases cites therein.

4

OBJECTION TO PROPOSED SETTLEMENT BY ROSE A. MUNOZ,
NOTICE OF INTENT TO APPEAR AND MOTION TO INTERVENE

### C. Proposed Attorney Fees Are Grossly Excessive

**1. The Proposed Attorney Fees are Should be Delayed Until After the Court Reviews the Actual Value of the Claims by Class Members**

Defendants agree not to oppose a request of $1,500,000 for attorneys' fees and expenses. The Settlement Agreement does not contemplate a guaranteed minimum amount of relief. It does not pay attorneys according to how much relief is actually received by their clients, the Class Members. It does not require fees to be paid fully only when Class Members receive relief.

Effectively the arrangement makes the fees contingent upon settling the litigation – and providing a complete release for Defendants – rather than upon serving clients by putting relief in Class Members' pockets. Class Counsel would get paid fully even if little or no value is received by their clients, the Class Members, including those who did not or could not use the relief within the allotted time periods.

The Settlement Agreement fails to require that some fees be withheld pending Court approval of a report by Class Counsel to the Court concerning distribution of relief.[6] Such a provision is critical because it acknowledges that Defendants have control of implementing the settlement (after the Administrator processes claims and verifies eligibility). Such a monitoring requirement provides for accountability, and recognizes the possibility that minimal amounts of relief will be redeemed. It also resolves an awkward inconsistency: The Petitions allege that Defendants mistreated Class Members, but the Settlement Agreement calls for Defendants to distribute relief to Class Members[7]. If Defendants indeed are so untrustworthy, as alleged, that they should be the target of lawsuits, how can they suddenly be trustworthy enough to administer a settlement with minimal oversight? Given the result obtained so far, the requested attorneys' fees appear to be grossly excessive. Class Counsel has not filed with the

---

[6] Reservation of fees pending a report of distribution of relief was proposed in Objections to a class action pending against Nextel, a wireless telephone company which recently merged with Sprint, concerning some similar claims and proposing similar relief. The Court directed the settling parties to consider revisiting the settlement in light of the objection, and approved the settlement after it was adjusted to accommodate this important feature. *See In re WIRELESS TELEPHONE FEDERAL COST RECOVERY FEES LITIGATION*, 03-md-01559-FJG (W.D. Mo. 2004), *aff'd on other grounds*, 922 F.3d 922 (8th Cir. 2005)

[7] Objector acknowledges that Defendant understandably denies the allegations. But merely denying them doesn't mean, without proof, that the allegations are false.

OBJECTION TO PROPOSED SETTLEMENT BY ROSE A. MUNOZ,
NOTICE OF INTENT TO APPEAR AND MOTION TO INTERVENE

court anything other than a general indication that the fees are reasonable. Ms. Munoz reserves the right to object to the requested attorneys' fees if, as, and when time and expense data is made available to her for review and inspection. However, there is one thing to be clear about, there is no "fund" created in this case from which to assess attorneys' fees as a percentage of the fund.

### 2.     The Class must be protected

The Court may also wish to view this case as similar to a "common fund" case and determine the amount of the fee as a portion of the total recovery to the Class. However, since no evidence has been submitted concerning the value of the settlement, the Court should defer ruling on the Fees until such time as it receives evidence concerning the probable benefit to the Class.

The amount of fees is objected to because there is no evidence of the basis of the fee request. The Court assumes the position of a fiduciary for the Class when the question of Attorneys' fees arises. At that point, Counsel and the Class have differing goals.  This is especially true, as here, when there is no evidence of what the total benefit to the Class will be.

In this case, class counsel is being paid an amount that has no apparent relationship to the amount of the settlement fund. Dozens of cases have confirmed and identified this fiduciary role.  For example:

> Before considering the proper methodology for awarding attorney's fees out of a common fund, the Court feels compelled to define its role in these proceedings.  When an attorney makes a claim for fees from a common fund, his interest is adverse to the interest of the class in obtaining recovery because the fees come out of the common fund set up for the benefit of the class. *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F. 3d 513, 516 (6th Cir. 1993).  This divergence of interests requires a court to assume a fiduciary role when reviewing a fee application because there is often no one to argue for the interests of the class: class members with small individual stakes in the outcome will often fail to file objections because they lack the interest or resources to do so and the defendant who contributed to the fund will usually have scant interest in how the fund is divided between the plaintiffs and class counsel." *In Re Copley Pharmaceutical, Inc.* 1 F. Supp. 2d 1407 (Wyoming, 1998).  (emphasis added.)

In *Wise v. Popoff*, et al. 835 F. Supp. 977, (E.D. Mich. 1993) the court describes the roles as follows:

> An attorney's role changes once he files a fee petition.  No longer a fiduciary for his client he becomes nothing more complex than another claimant against the fund created for the client's benefit.  The court must, in turn, become "the fiduciary for the fund's beneficiaries and must carefully monitor disbursement to the attorneys by scrutinizing the

fee applications." *Skelton v. General Motors Corp.*, 860 F 2d 250, 253 (7th Cir. 1988), cert denied, 493 US 810, 110 S. Ct. 53, 107 L. Ed. 2d 22 (1989).  A court should not "rubber stamp" fee applications *In re Cincinnati Gas & Electric Co. Securities Litigation*, 643 F. Supp. 148, 152 (S.D. Ohio 1986).  The fact that the settling defendant may agree with the fee application (or, as in this case, be persuaded to remain silent about it) is irrelevant to the Court's analysis because the defendant having already paid the settlement amount, has little interest in the portion of the fund that the class attorney is allowed to retain". (emphasis added)

This Honorable Court, therefore, must act as a fiduciary to the Class and conduct an in depth investigation of the basis for the requested fee. The Court should at least determine what the Lodestar amount is (hours expended time hourly billing rate) and whether that bears a rational relationship to the fee requested.  The Court should investigate not only the amount of time expended, but by whom it was expended. Was it by a partner, an associate or a contract attorney, and were the rates reasonable for the locale?

**D.     There Should be a Cy Pres Award to Indirectly Benefit Class Members Who Cannot Make a Claim or Were Granted No Relief in The Settlement**

As discussed above, there are class members that will not receive any direct benefit from the settlement.  When the settlement employs a reversionary fund, a cy pres distribution is appropriate to ensure that the public and the class are adequately compensated.

Abuses in the class action system have been the topic of numerous court decisions.  *Saylor v. Lindsley*, 456 F2d. 896, 900-01 (DD Cir. 1972); *Piabvino v. Bailey (Piabvino II)* 757 F.2d 1112, 1143-44 (11th Cir. 1985), cert denied 476 US1169, 106 S.Ct. 2889, 90 L.Ed.2d 976 (1986); *Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518 (1st Cir. 1991).

Courts have noted that the largest number of abuses occur in connection with "reversionary fund settlements" which include a "clear sailing clause" and "revertible clause."  A "revertible clause" settlement is one in which any settlement proceeds that are not claimed by class members "revert" back to the defendant.  *Sylvester et al.v. Cigna Corp.,* 369 F.Supp.2d 34 (D.Me. 2005). Such reversionary fund settlements commonly include a feature under which each class member is required to return a "claims form" to obtain their settlement payment.  Id.  However, the defendant retains any unclaimed funds.   A "clear sailing" clause is a provision in a class action settlement in which the defendant agrees not to oppose class counsel's attorneys' fee request as long as the requested fee does not exceed a

negotiated amount. *Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 520 N.1 (1st Cir. 1991).

The proposed class action settlement before this Court is a reversionary fund settlement with an apparent clear sailing provision. Courts have noted that when a proposed settlement contains a reverter clause and/or a clear sailing clause, that the proposed settlement should be viewed with even greater suspicion than the normal class action settlement, and should not be presumed to be fair to the class members on whose behalf it was allegedly made. *International Precious Metals Corp. v. Waters,* 530 U.S. 1223, 147 L. Ed. 2d 265, 120 S.Ct. 2237 (2000); *Sylvester, et al. v. Cigna Corp.,* 369 F.Supp.2d 34 (D.Me. 2005).

Once the court requires the parties to submit proof of the value of the settlement, a cy pres distribution of unclaimed funds should be required.

### D. **Adoption of all other objections**

Further, this Objector adopts all bona fide objections filed by other class members in this case and incorporates them by reference as if they appeared in full herein.

### II. **OBJECTORS' VALUE TO CLASS-ACTION PROCESS.**

In their zeal to win approval of an agreement, professional class counsel and professional defense counsel often overlook or deny the importance of objectors to the class-action process. Indeed, professional class counsel and professional defense counsel may even denounce objectors' counsel as "serial objectors," or use some other pejorative epithet.[8] However, settlements, such as this one, can be so complicated that only lawyers who have participated in many class action lawsuits can provide insightful and useful analysis, thoughtful alternatives, and a context within which to identify flaws or oversights in a settlement, and thereby assist a court in fulfilling its duty to examine the settlement as an independent and impartial neutral.

Thus, objectors provide great value to the class action process. Without resolving the issues described above, the Settlement could become a complete sham and no one would be the wiser. The

---

[8] Such ad hominem attacks can be presumed to arise when legitimate, persuasive and substantial responses to the merits of the objections are unavailable.

8

judicial system would have failed Class Members by requiring no mechanism for assuring that the agreed relief ever is received by the persons who should benefit.  The foregoing observations are submitted to improve the Settlement, and thereafter to guarantee it will work, and to show when and how well it is completed.  These improvements are developed only now because objectors offer the last opportunity to preserve the adversary process which is necessary to test the fairness of a proposed settlement.

"It is desirable to have as broad a range of participants in the fairness hearing as possible because of the risk of collusion over attorneys' fees and the terms of settlement generally. . . .  It is impossible for a class to select, retain or monitor its lawyers as an individual client would." *Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 412 (E.D. Wis. 2002).  "Class counsel and defendants' counsel may reach a point where they are cooperating in an effort to consummate the settlement." *Id.*  "Courts, too, are often inclined toward favoring the settlement, and the general atmosphere may become largely cooperative." *Id.*

"Thus, objectors serve as a highly useful vehicle for class members, for the court and for the public generally." *Great Neck*, 212 F.R.D. at 412.  "From conflicting points of view come clearer thinking." *Id.* at 412-13.  "Therefore, a lawyer for an objector who raises pertinent questions about the terms or effects, intended or unintended, of a proposed settlement renders an important service." Id. at 413.

The value of objectors is even acknowledged by attorney Melvyn Weiss, one of the nation's most well-known class action attorneys, of the firm now known as Milberg Weiss & Bershad LLP: "Objectors are part of the class action system and, though they may be irritating from time to time, the system's been working effectively.  If objectors can come in and negotiate a benefit, that's great.  I'm not going to criticize one of the safeguards [of the class action process].  The objectors act as a check and balance to the whole procedure."  See, "Objectors to class action settlements:  Watchdogs or scum of the earth?" by Joe Frey, *Insure.com* website, March 23, 2000.

"The law generally does not allow good Samaritans to claim a legally enforceable reward for their deeds*." Reynolds v. Beneficial Nat. Bank,* 288 F.3d 277, 288 (7th Cir. 2002) (Posner, C.J.).  "But when professionals render valuable albeit not bargained-for services in circumstances in which high

9

OBJECTION TO PROPOSED SETTLEMENT BY ROSE A. MUNOZ,
NOTICE OF INTENT TO APPEAR AND MOTION TO INTERVENE

transaction costs prevent negotiation and voluntary agreement, the law does allow them to claim a reasonable professional fee from the recipient of their services." Id. "That is the situation of objectors to a class action settlement." Id.

In other cases, objectors' counsel have been recognized where their efforts have augmented the common fund or otherwise improved a class action settlement. *See, e.g., Bowling v. Pfizer, Inc.,* 922 F.Supp. 1261, 1285 (S.D. Ohio), aff'd, 102 F.3d 777 (6th Cir. 1996); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 257, 359-60 (N.D.Ga. 1993). Indeed, even in cases where objectors appeared but the settlement terms were not altered, courts have recognized their value in that their presence improved the process and assisted the court in its scrutiny of the settlement. *See County of Suffolk v. Long Island Lighting Co.,* 907 F.2d 1295, 1325-27 (2d Cir. 1990); *Howes v. Atkins*, 668 F.Supp. 1021, 1027 (E.D.Ky. 1987); *Frankenstein v. McCrory Corp.,* 425 F.Supp. 762, 767 (S.D.N.Y. 1977); *see also Domestic Air,* 148 F.R.D. at 359. In *In Re: PNC Financial Services Group, Inc. Securities Litigation*, Case No. 2:02-cv-00271-DSC (U.S.D.C. W.D. Pa. W.D.), decided last month on April 12, 2007, Judge Cercone made a specific finding "in recognition of the benefit to the Class created by the objection and the time spent thereon by Objector's Counsel . . ." and thereby awarded compensation to Objector's counsel.

Accordingly, Objector wishes to reserve the right to apply for reasonable and appropriate compensation for the valuable and crucially important services which have been provided in assisting the Court with this complex matter, preserving the adversary process needed to test the Proposed Settlement, identifying problems with the Proposed Settlement, and presenting substantial and workable solutions.

Just as objectors' counsel should be encouraged to assist the class-action process, so should individual class members be encouraged to participate. Accordingly, an incentive award is appropriate for Objector herein for her willingness to be a named party, promoting fairness, and contributing to the common welfare of the Class.

## **MOTION TO INTERVENE**

Ms. Munoz asserts that a motion to intervene is unnecessary in order to preserve her right to appeal in this case, *Devlin v. Scardelletti,* 536 U.S. 1 (2002), and does not hereby waive that right, but to

the extent necessary to comply with the ambiguous notice sent out in this case, she hereby moves to intervene pursuant to Federal Rule 24 (a) and (b). Ms Munoz is a class member who is so situated that the disposition of the action may as a practical matter impair or impede her ability to protect her interest, which is not adequately represented by the existing parties. Her claims have questions of fact and law common to the other class members, and allowing intervention will not unduly delay or prejudice the adjudication of the rights of the other parties. She seeks to intervene, if necessary, to lodge the objection contained herein.

## CONCLUSION

WHEREFORE, This Objector respectfully requests that this Court:

A. Upon proper hearing, sustain these Objections;

B. Upon proper hearing, enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement;

C. Order all parties back to mediation in light of the Safeco/Geico opinion;

D. Grant Ms. Munoz' motion to intervene;

D. Order that all formal and informal discovery be shared with counsel for Ms. Munoz in the same manner it has been shared with Class Counsel;

E. Award an incentive fee to this Objector for her service as a named representative of Class Members in this litigation.

Dated: June 7, 2007

DARRELL PALMER
Attorney for Objector, Rose A. Munoz