IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

STEPHEN YEAGLEY,

    Plaintiff,

v.

WELLS FARGO & COMPANY and
WELLS FARGO BANK, N.A.,

    Defendants.

                                     /

No. C 05-3403 CRB

**MEMORANDUM AND ORDER**

After approving the parties' settlement agreement in this Fair Credit Reporting Act ("FCRA") nationwide class action, the Court awarded class counsel $326,000 in attorney's fees. *See* Memorandum & Order, January 18, 2008 (Dkt. # 169). On appeal, the Ninth Circuit vacated the Court's award on the ground that the Court had improperly applied the common fund method, rather than the lodestar method, in arriving at its fee award. *See Yeagley v. Wells Fargo & Co.*, 2010 WL 601460, at *1 (9th Cir. 2010). Following remand, class counsel renewed its motion for fees and costs. That motion is now pending before the Court.

In keeping with the Ninth Circuit's instruction, the Court has re-examined class counsel's request for attorneys' fees under the lodestar method. Applying that method, the Court finds that a reasonable fee in this case is equal to $332,202.76. The Court therefore

awards class counsel $332,202.76 in attorneys' fees and $33,091.68 in unreimbursed expenses.

## BACKGROUND

In its previous Order granting class counsel's request for attorney's fees, the Court provided a detailed overview of this case's factual and procedural history. Memorandum & Order at 1-9 (Dkt # 169). The Court also explained its reasons for approving the parties' settlement agreement, despite the fact that the settlement award provided the class with very little value. *Id.* at 4-9. This information remains highly relevant to the Court's consideration of a reasonable attorney's fee award. The Court therefore incorporates by reference the first nine pages of its previous order.

### A. The Court's Prior Award

The Court previously concluded that an award of $326,000 in attorneys' fees was "reasonable in light of the relative merits of the lawsuit and the value of the settlement." Memorandum & Order at 11. In computing this amount, the Court applied the "percentage-of-the-fund method." *Id.* at 9-10. It found that the "'common fund,' that is, the recovery to the class [under the parties' settlement agreement]" had an aggregate value of $1,303,125. The Court then multiplied this aggregate value by the Ninth Circuit's 25 percent-of-the-fund "benchmark" to arrive at its final award of $326,000. *Id.* at 10-11.

### B. The Ninth Circuit's Decision

Unhappy with the Court's award, class counsel, who had requested $1.5 million in fees, appealed. Counsel did not challenge the Court's application of the "percentage-of-the-fund" method. Rather, it argued that the Court had underestimated the aggregate value of the common fund and thereby calculated a fee that was too low. *See Yeagley*, 2010 WL 601460 at *1.

The Ninth Circuit granted counsel's request and vacated the award. *Id.* It did not, however, hold that this Court had erred in calculating the value of the common fund. *Id.* It held, instead, that this Court had committed an error when it chose the common fund method in the first place. In the court's view, "the attorneys' fees should have been calculated using

the lodestar method[.]" *Id.* Accordingly, the court remanded counsel's fee request to this Court so that the Court could "exercise its broad discretion under the lodestar method to recalculate a reasonable attorneys' fee." *Id.*

Counsel's renewed request is now before the Court.

## DISCUSSION

### A. The Lodestar Method

The lodestar method for determining a reasonable attorney's fee has two parts. *See Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000).

> First, a court determines the "lodestar" amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. The party seeking an award of fees must submit evidence supporting the hours worked and the rates claimed. A district court should exclude from the lodestar amount hours that are not reasonably expended because they are "excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

*Id.* Once the court determines the lodestar amount, the Court may in "'rare' and 'exceptional' cases" adjust the lodestar upward or downward "using a 'multiplier' based on factors not subsumed in the initial calculation." *Id.* (citing *Blum v. Stevenson*, 465 U.S. 886, 897, 898-901 (1984)). Such adjustments must be supported by "specific evidence on the record and detailed findings by" the court. *Id.*

### B. A Reasonable Fee

Step one of the lodestar method, the only step the Court need address here, requires the Court to determine a "lodestar" amount by multiplying the number of hours counsel reasonably expended on this litigation by a reasonable hourly rate. *See id.* Counsel has submitted billing records indicating that it spent 2,100.2 hours litigating this case at an average hourly rate of $461.39. It therefore maintains that the appropriate lodestar amount is equal to $969,017.00.

The Court disagrees. Though the Court finds counsel's requested hourly rates to be reasonable, it also finds that a reasonable attorney would not have spent more than 720 hours litigating this case. As a result, the Court will exclude 1,380.2 hours of the 2,100.2 hours expended by counsel on this case because those hours were "excessive . . . or otherwise

3

unnecessary." *See Hensley*, 461 U.S. 434. Multiplying counsel's average hourly rate of $461.39 by 720 hours yields a lodestar amount of $332,202.76. Because the Court does not find this case to be the type of "rare" or "exceptional" one that would warrant a departure from this presumptively reasonable amount, the Court will award the calculated lodestar.

The Court's conclusion that 2100.2 hours, the equivalent of one lawyer working full-time for a year, was not a reasonable amount of time to expend on this litigation is motivated by two considerations. First, as the Court explained in its previous Order, Plaintiff's case was exceedingly weak. Order at 7 (describing the "likely rewards of litigation" as "nearly nil"); *see also id.* at 8 (noting that "[i]f this case had proceeded to summary judgment it would have almost certainly resulted in a complete defeat for the class").

In addition, class counsel should have been aware of the thinness of its case from the outset. The crux of Plaintiff's case was his allegation that Wells Fargo's unsolicited mailings to class members did not qualify as "firm offer[s] of credit" under the FCRA (and thus did not justify Wells Fargo's acquisition of class members' credit reports) because the solicitations did not state the definitive amount of credit that was being offered or the interest rate on that credit. Compl. ¶ 27. At the time it filed suit, class counsel knew the precise contents of the solicitations that Wells Fargo had sent class members and any technical deficiencies that they contained. This was not a case in which the extent of the defendant's misconduct (or lack thereof) revealed itself only after the commencement of discovery. As a result, counsel knew all or almost all it needed to know to properly evaluate the merits of this case before it drafted the Complaint.

Class counsel was also aware from the outset that, though the FCRA requires a solicitation to include certain items in order to qualify as a "firm offer of credit," *see* 15 U.S.C. § 1681a(l)(3), the amount of credit and the interest rate are not among them. *See Nasca v. J.P. Morgan Chase, N.A.*, 2007 WL 678407, *3 (S.D.N.Y. March 5, 2007) (stating that Plaintiff "does not – and cannot – point to any provision of the FCRA that requires a creditor to disclose definitive credit amounts or interest rates to a recipient in the solicitation"). Because the FCRA does not expressly require that a solicitation include the

4

amount of credit or the interest rate to qualify as a "firm offer of credit," class counsel knew or should have known at the start that its case was a longshot. *See* Memorandum & Order at 7 (noting that "[m]any courts have rejected" Plaintiff's theory and citing examples).

Given that class counsel knew, from the beginning, that its case was thin at best, the Court has serious doubts about the reasonableness of its decision to expend 2,100 hours pursuing it. In fact, the Court harbors some doubt regarding the reasonableness of counsel's decision to file the suit at all.

The Court's second, and more important, reason for finding that 2,100 hours was an excessive amount of time to spend litigating this case is the fact that counsel obtained extremely poor results. "[T]he degree of success obtained" is "the most critical factor" in determining the reasonableness of a fee request. *See Hensley*, 461 U.S. at 436; *see also United States v. $12,248 U.S. Currency*, 957 F.2d 1513, 1520 (9th Cir. 1991) (holding that an "analysis of the results obtained in the case is . . . probative of the reasonableness of the number of hours spent and thus the reasonableness of the fee"). Moreover, "in judging the plaintiff's level of success and the reasonableness of hours spent achieving that success, a district court should 'give primary consideration to the amount of damages awarded as compared to the amount sought.'" *McCown v. City of Fontana*, 565 F.3d 1097, 1104 (9th Cir. 2009) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)).

Comparing the settlement award obtained by class counsel in this case to the relief it initially sought reveals that counsel's "level of success" was exceptionally low. In its Complaint, counsel sought declaratory and injunctive relief, statutory damages of up to $1,000 for each solicitation sent to each class member, and punitive damages. Compl. at 16. Counsel obtained *none* of these things. Instead, after its claims for declaratory and injunctive relief were dismissed on a 12(b)(6) motion, class counsel settled for an agreement by Wells Fargo to provide each class member with two free "tri-merged" credit reports, one in 2007 and one in 2008. *See* Memorandum & Order, at 3 (describing the terms of the settlement). To receive each credit report, a class member had to submit a separate claim form to the settlement administrator.

As the Court explained in its last order, this settlement was "virtually worthless" to class members. *See id.* at 1, 5-6. Consumers are typically entitled to one free credit report a year from each credit reporting agency. *See id.* at 5. Thus, "the value of the tri-merged credit report is the time a participating class member [would] save by not having to request free credit reports from three different agencies." *Id.* at 6. Such value is marginal.

Moreover, in order to receive the second free credit report, class members had to request it *after* January 1, 2008, using a claim form that was sent to the class in May 2007. The likelihood that a class member would keep the claim form for seven months, take the time to fill it out, and then remember to submit it sometime in 2008 is so low, especially given the limited value of the tri-merged report in the first place, that the offer of a second credit report was virtually meaningless.

The Court's conclusion that the settlement offered little value to the class does not rest on these insights alone, however. Definitive evidence of the settlement's worthlessness is provided by the class' abysmal response to the settlement offer. Out of the 3.8 million class members to whom notice of the settlement was mailed, only 30,000 individuals submitted claim forms. *Id.* at 3. In other words, *less than one percent* of the class chose to accept Wells Fargo's offer of a free credit report. This dismal response rate is clear evidence that "the degree of success obtained" by class counsel was extremely limited.

In sum, class counsel chose to file and pursue a case that was almost certainly meritless and that counsel knew or should have known was very unlikely to succeed. Not surprisingly, counsel failed to obtain *any* of the relief it sought in its Complaint. Instead, it secured for the class a settlement award that was of such little value that only a tiny fraction of the class bothered to take it. In short, counsel obtained a worthless settlement in a meritless case. The question now before the Court is how much time a reasonable attorney would have spent to do so.

By requesting reimbursement for 2100.2 hours, class counsel contends, in effect, that it would be reasonable for an attorney to spend a full-year of his or her career working solely

on such a senseless endeavor. The Court cannot agree. Only the most irrational attorney would even consider devoting that much time to such a meaningless and impractical case.

At the same time, the Court acknowledges that some class members – albeit very few – did receive a benefit from the settlement. The settlement was therefore not a complete and total loss. The Court is also aware that even a reasonable attorney occasionally misjudges the value of a case and might, as a result, pursue a case longer than hindsight would deem prudent.

In light of these considerations, the Court finds that a reasonable attorney would spend, at most, four months (or 720 hours) litigating a case such as this one. A reasonable lawyer working full-time would have realized within a month that this case had little or no merit and little or no likely reward. At that point, many rational attorneys would have dropped the case. The Court is willing to accept, however, that a reasonable lawyer, having spent a full month on a case, might inquire about a potential settlement. The Court is convinced, though, that such an attorney would spend no more than another month or two pursuing a nearly worthless settlement like the one at issue in this case. Finally, assuming that settlement was obtained, the lawyer might then reasonably spend another month distributing it. Thus, the Court finds that four months is the very most a reasonable attorney would have spent litigating this case.

To summarize: the Court finds that 1,380.2 hours of the 2100.2 hours requested by class counsel were "excessive . . . or otherwise unnecessary." *See Hensley*, 461 U.S. 434. In light of this case's questionable merits and the very poor results obtained by counsel, the Court finds that a lawyer would reasonably expend no more than 720 hours on it. At counsel's average hourly rate of $461.39, the lodestar amount is equal to $332,202.76. The Court finds this amount to be a reasonable fee award and has no grounds to adjust it either upward or downward. *See Perdue v. Kenny A. ex rel. Winn*, 130 S.Ct. 1662, 1673 (2010) (holding that there is a "'strong presumption' that the lodestar figure is reasonable" and that that presumption may be overcome only in "rare circumstances" that are not present here).

## CONCLUSION

After carefully considering the entire record in this case, including class counsel's fee submission, the Court awards class counsel $332,202.76 in attorneys' fees and $33,091.68 in unreimbursed expenses.

**IT IS SO ORDERED.**

Dated: May 20, 2010

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE